# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF IOWA
### CENTRAL DIVISION

| | |
|---|---|
| MCCAFFREE FINANCIAL CORP. ON BEHALF OF THE MCCAFFREE FINANCIAL CORP. EMPLOYEE RETIREMENT PROGRAM, on behalf of a class of those similarly situated, | ) ) ) ) ) ) Case No. 4:14-cv-102-SMR |
| Plaintiff, | ) ) Hon. Stephanie M. Rose |
| vs. | ) ) **ORAL ARGUMENT REQUESTED** |
| PRINCIPAL LIFE INSURANCE COMPANY, | ) ) ) ) |
| Defendant. | ) |

## DEFENDANT PRINCIPAL LIFE INSURANCE COMPANY'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

# Table of Contents

        **Page**

INTRODUCTION ..................................................................................................................1

ALLEGED FACTS ..............................................................................................................1

LEGAL STANDARD ..........................................................................................................3

ARGUMENT ........................................................................................................................3

I.     PRINCIPAL LIFE CANNOT BE HELD LIABLE FOR ASSESSING FEES THAT PLAINTIFF AUTHORIZED. ...........................................................................3

II.    PLAINTIFF HAS FAILED TO PLEAD THAT PRINCIPAL LIFE IS AN ERISA FIDUCIARY IN ANY RELEVANT RESPECT. ..................................................6

      A.     ERISA's Fiduciary Standards .................................................................6

      B.     Standing Alone, The Use Of Separate Accounts Cannot Create Fiduciary Status ...............................................................................................7

      C.     Plaintiff Has Failed To Plead That Principal Life Became A Fiduciary By Giving "Investment Advice." ...............................................................9

      D.     Principal Life Cannot Be A Fiduciary As A Plan Administrator Because Separate Account Fees Are Not Related To Plan Administration. ......................10

CONCLUSION ..................................................................................................................11

i

## INTRODUCTION

All of Plaintiff's claims require Plaintiff to show that Defendant Principal Life Insurance Company ("Principal Life") acted as an ERISA fiduciary "when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000). The "action subject to complaint" in this case is Principal Life's assessment of fees in connection with its services to Plaintiff's 401(k) plan – fees that Plaintiff authorized in its contract with Principal Life. In collecting these contractually agreed-upon fees, Principal Life was not exercising any authority or control with respect to the plan or otherwise acting as a fiduciary; it was charging the contractual fees its customer had authorized. As a result, all of Plaintiff's claims should be dismissed with prejudice.

## ALLEGED FACTS

The McCaffree Financial Corp. Employee Retirement Program ("McCaffree Plan") is a 401(k) plan. The McCaffree Plan is administered by Plaintiff McCaffree Financial Corp. *See* Compl. ¶¶ 1, 4. As the plan administrator, Plaintiff is a fiduciary under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, with responsibility for ensuring that the fees charged by any service providers are reasonable. *See*, *e.g.*, Dep't of Labor, ERISA Advisory Opinion 97-15A, 1997 WL 277980, at *4 (May 22, 1997).

Principal Life is an insurance company based in Des Moines. In addition to selling insurance products, Principal Life provides services to 401(k) plans: record-keeping, access to investment options, and other services. Compl. ¶ 13. In offering these services, Principal Life competes with many other service providers, including other insurance companies, mutual fund companies, banks, consulting firms, third-party administrators, brokerage firms, accounting firms, and payroll providers. *See* Keith Clark, *The Defined Contribution Handbook*, at 26-27 (2003). The service provider industry for 401(k) plans "is – and always has been – extremely

competitive." 2013 Recordkeeping Survey, *Plan Sponsor*, available at

http://plansponsor.com/RK_Survey_2013.aspx (last visited May 9, 2014).

In addition to other investment vehicles, Principal Life uses "separate accounts" to provide 401(k) plan customers with easy access to investment options. Compl. ¶¶ 2, 13-14, 22-27. As the name suggests, separate accounts hold assets that are kept separate from Principal Life's general corporate funds. They are held this way because "state insurance law and ERISA require [insurance companies] to keep retirement contributions separate from other assets." *Leimkuehler v. American United Life Ins. Co.*, 713 F.3d 905, 908 (7th Cir. 2013). Pursuant to the directions of participants in the McCaffree Plan and a group annuity contract (Exhibit A to Mohs Declaration), Principal Life deposits the McCaffree Plan's money in a variety of Principal mutual funds. Compl. ¶¶ 2, 24-25.[1]

Plaintiff hired Principal Life as its 401(k) service provider in 2009, *id.* ¶ 5, presumably after deciding (in the exercise of its fiduciary duty) that Principal Life's combination of price and services was a good, prudent fit for the needs of the McCaffree Plan. When it hired Principal Life, Plaintiff authorized the same fees it now says violate ERISA: (1) a "Management Fee" that, as the contract states, "will be a percentage of the value of assets" in the separate account, and (2) "Operating Expenses," i.e., "those charges which must be paid in order to operate a Separate Account or obtain investments for a Separate Account." Ex. A at 18; *see also id.* at 19. The amount of the Management Fee for each separate account, expressed as a percentage of assets, is listed in the contract. *Id.* at 27-31. While Principal Life reserved the right to raise the

---

[1] The Court may consider the contract on a motion to dismiss because it is explicitly referenced in the complaint. All documents that are "necessarily embraced by the complaint" may be considered on a motion to dismiss. *Enervations, Inc. v. Minn. Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004).

2

Management Fee (subject to a cap), *see* Compl. ¶ 28, Plaintiff does not allege that Principal Life has ever exercised this right. Nor does Plaintiff allege that Principal Life ever assessed any Operating Expenses that were not necessary to operate the separate accounts or obtain investments for those accounts.

## LEGAL STANDARD

Federal pleading standards are intended to prevent a plaintiff with a "largely groundless claim" from forcing defendants into either costly discovery or a settlement of a weak claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007) (citation omitted). To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Factual allegations that are merely "consistent with" liability will not suffice. *Id.* Determining whether a complaint has met these standards is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## ARGUMENT

**I.     Principal Life Cannot Be Held Liable For Assessing Fees That Plaintiff Authorized.**

Plaintiff has brought claims for a breach of fiduciary duty and the commission of prohibited transactions under ERISA. Acting as a fiduciary is a prerequisite for both claims, as is breaching a legal duty. *See* 29 U.S.C. §§ 1104(a) & 1106(b). But a service provider neither acts as a fiduciary nor breaches any duty when it charges fees that are approved by a plan fiduciary – here, Plaintiff. *See Chicago Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463, 473 (7th Cir. 2007) ("Given that this [pricing] scheme was the very deal for which [plaintiff] bargained at arms' length, [defendant] owed no fiduciary duty in this regard.").

3

Because the Complaint does not allege that Principal Life controlled Plaintiff's approval of the challenged fees, the Complaint should be dismissed.

Three recent Court of Appeals opinions illuminate why Plaintiff cannot state a claim under ERISA. In *Hecker v. Deere & Co.*, 556 F.3d 575, 583 (7th Cir. 2009), the Seventh Circuit held that "a service provider does not act as a fiduciary with respect to the terms in the service agreement if it does not control the named fiduciary's negotiation and approval of those terms." In *Renfro v. Unisys Corp.*, 671 F.3d 314 (3d Cir. 2011), the Third Circuit, relying on *Hecker*, applied this concept to the fees paid to a 401(k) service provider. Plaintiffs alleged that the fees were excessive, but the Third Circuit ruled that the service provider "owes no fiduciary duty with respect to the negotiation of its fee compensation" because the company that hired the service provider was responsible for those fees. *Id.* at 324.

Most recently, the Seventh Circuit applied this concept to "revenue sharing," a revenue stream that, like the Management Fee that Plaintiff is challenging in this case, provides compensation to Principal Life for its services. The court in *Leimkuehler* rejected plaintiff's challenge to revenue sharing because the service provider "does disclose the bottom line cost of every fund that it offers." *Leimkuehler*, 713 F.3d at 912. A number of district courts similarly have ruled that a service provider's fees that were fully disclosed and authorized by contract cannot support an ERISA claim. *See, e.g.*, *Santomenno v. John Hancock Life Ins. Co.*, No. 10-01655, 2013 WL 3864395, at *6-7 (D.N.J. July 24, 2013), *appeal pending* (3d Cir.); *Danza v. Fid. Mgmt. Trust Co.*, No. 11-2893, 2012 WL 3599362, at *3 (D.N.J. Aug. 20, 2012), *aff'd*, 533 Fed. Appx. 120 (3d Cir. 2013); *Zang v. Paychex, Inc.*, 728 F. Supp. 2d 261, 271 (W.D.N.Y. 2010); *F.W. Webb Co. v. State St. Bank & Trust Co.*, No. 09-1241, 2010 WL 3219284, at *5-7 (S.D.N.Y. Aug. 12, 2010).

Under these authorities, Plaintiff can state an ERISA claim challenging the Management Fee only if it can plausibly plead that Principal Life controlled Plaintiff's decision to engage Principal Life and enter into a contract that authorized the Management Fee. It cannot. The service provider (Principal Life) has no control over the plan administrator's (Plaintiff's) decision to enter into a contract or to take its business elsewhere. It is the plan administrator, not the service provider, who makes that decision.

The result might be different if Plaintiff alleged that Principal Life unilaterally and without adequate notice raised the Management Fee, or if Plaintiff alleged facts making it plausible to think Principal Life calculated the Operating Expenses in an unfair or unscrupulous manner. But the Complaint says no such thing. In the absence of such allegations, the Complaint should be dismissed.

Admittedly, Plaintiff's theory finds some limited support in *Santomenno v. Transamerica Life Insurance Co.*, which found that a service provider may become an ERISA fiduciary with respect to negotiated and agreed-upon fees. No. 12-02782, 2013 WL 603901, at *6-7 (C.D. Cal. Feb. 19, 2013). But *Transamerica* was wrongly decided on that point. It ignored the fact that it is the plan administrator who ultimately decides whether to accept a service provider's proposal and agree to a contract. When a service provider bids for business, the only party acting as a fiduciary is the plan administrator. *Hecker*, 556 F.3d at 583; *Renfro*, 671 F.3d at 324-25; *F.H. Krear & Co. v. Nineteen Named Trs.*, 810 F.2d 1250, 1259 (2d Cir. 1987) (service provider was not an ERISA fiduciary with respect to allegedly excessive fees because, while the service provider "may have become an ERISA fiduciary at some point after entering into the Contracts, it plainly held no such status prior to the execution of the Contracts, for it had no relationship with the Funds and no authority or responsibility for the terms under which the Trustees would

retain it"); *Schulist v. Blue Cross of Iowa*, 717 F.2d 1127, 1131 (7th Cir. 1983); *Caremark*, 474 F.3d at 473. If the plan administrator thinks the service provider's fees are too high, it can hire another provider with lower fees. *See*, *e.g.*, *Leimkuehler*, 713 F.3d at 912 (noting that plaintiff "was free to seek a better deal with a different 401(k) service provider if he felt that [the defendant's] investment options were too expensive").

Rather than acknowledging this reality, Plaintiff engages in the legal version of name-calling: According to Plaintiff, Principal Life charges an "extra layer" of fees, Compl. ¶¶ 2, 30, and the fees are "grossly excessive," "overcharges," "excessive," and "exorbitant." *Id.* ¶¶ 1-3, 31-32, 38. This rhetoric does not amount to well-pleaded factual allegations and hence may be disregarded under *Twombly* and *Iqbal*. Even if these characterizations were credited, they beg the question of why Plaintiff is complaining when, again, Plaintiff itself authorized those fees. Principal Life won Plaintiff's business in a competitive marketplace, and it was up to Plaintiff, as the administrator of the McCaffree Plan, to decide whether Principal Life's combination of fees and services was a good value. Having made that decision, it cannot claim that Principal Life violated any duty by charging the fees that Plaintiff itself authorized.

## II. Plaintiff Has Failed To Plead That Principal Life Is An ERISA Fiduciary In Any Relevant Respect.

Plaintiff's claims should be dismissed for a related but independent reason: Plaintiff has failed to plead facts plausibly showing that Principal Life was an ERISA fiduciary with respect to the challenged conduct.

### A. ERISA's Fiduciary Standards

As the administrator of the McCaffree Plan, Plaintiff is a fiduciary under ERISA. *See*, *e.g.*, *Varity Corp. v. Howe*, 516 U.S. 489, 498 (1996). Plaintiff does not claim Principal Life is the administrator of the McCaffree Plan, but instead alleges that it became a "functional"

fiduciary under 29 U.S.C. § 1002(21)(A). This provision has three subsections. Subsection (i) provides that "a person is a fiduciary with respect to a plan to the extent … he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets." Subsection (ii) provides that "a person is a fiduciary … to the extent … he renders investment advice for a fee." Subsection (iii) provides that "a person is a fiduciary … to the extent … he has any discretionary authority or discretionary responsibility in the administration of such plan."

A critical phrase in the definition is "to the extent." Because of this phrase, fiduciary status under ERISA "is not an all-or-nothing concept." *Trs. of the Graphic Commc'ns Int'l Union Upper Midwest Local 1M Health & Welfare Plan v. Bjorkedal*, 516 F.3d 719, 732 (8th Cir. 2008) (citation omitted). Rather, even for a person who is a functional fiduciary in one way or another, the question is "whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram*, 530 U.S. at 225-26; *Kalda v. Sioux Valley Physician Partners, Inc.*, 481 F.3d 639, 644-45 (8th Cir. 2007). This means a person can be a fiduciary for one function but not others. *Kerns v. Benefit Trust Life Ins. Co.*, 992 F.2d 214, 217 (8th Cir. 1993). For example, an employer is often both the plan sponsor and a fiduciary of its 401(k) plan, but only actions the employer takes in its capacity as a fiduciary can give rise to fiduciary liability. *See Pegram*, 530 U.S. at 225-27.

### B. Standing Alone, The Use Of Separate Accounts Cannot Create Fiduciary Status.

Where, as here, a claim involves plan assets, the relevant prong of subsection (i) is the one that provides that a person is a fiduciary to the extent he exercises authority or control over those assets. In other words, "functional fiduciary status pursuant to § 1002(21)(A)'s 'plan assets' clause must involve actual control over the assets at issue, and therefore, cannot be based

7

solely on an ambiguous degree of influence over another person who retains control over the assets." *Walsh v. Principal Life Ins. Co.*, 266 F.R.D. 232, 250 (S.D. Iowa 2010). Applying subsection (i) to the allegations in the Complaint, Plaintiff must adequately plead that Principal Life exercised control over the challenged fees. The Complaint lacks factual allegations to support such a claim.

Plaintiff claims that Principal Life is a fiduciary under subsection (i) because Principal Life "has the discretion to choose which Separate Accounts are offered to each plan … and has the further discretion to add additional Separate Accounts." Compl. ¶ 55. But the ability to change the universe of investment options available for a plan fiduciary to select for a plan does not convert a service provider into a fiduciary. *See Leimkuehler*, 713 F.3d at 911-12; *Santomenno*, 2013 WL 3864395, at *7; *Zang*, 728 F. Supp. 2d at 272. This theory also fails to link the allegedly fiduciary conduct to "the action subject to complaint." *Pegram*, 530 U.S. at 226. Selecting which separate accounts are to be made available to the McCaffree Plan (which does not have to select any of them) has nothing to do with charging the fees that, again, Plaintiff itself authorized.

Plaintiff claims Principal Life is a fiduciary under subsection (i) because it "has discretionary authority or discretionary control" to set the separate account fees by raising them up to a 3 percent cap. Compl. ¶ 55. But this ignores the "exercise" requirement under subsection (i). It is not enough to "have" authority to do something under this provision; what matters under subsection (i) is the "exercise" of control. As the Eighth Circuit has explained, "[b]ecause this subsection imposes a fiduciary duty on those not named as a fiduciary, its reach is limited to circumstances where the individual actually exercises some authority." *Bjorkedal*, 516 F.3d at 733. Nowhere in the Complaint is there an allegation that Principal Life exercised its right to

raise the separate account fees. Accordingly, Plaintiff has failed to state a plausible claim that Principal Life is a fiduciary under subsection (i).

### C. Plaintiff Has Failed To Plead That Principal Life Became A Fiduciary By Giving "Investment Advice."

Similarly, Plaintiff's claim that Principal Life became a fiduciary under subsection (ii) by giving "investment advice" relies on either unadorned legal conclusions or a misunderstanding of Principal Life's "admission" that it is an "investment manager" and, hence, a limited ERISA fiduciary.

Subsection (ii) provides that a person is a fiduciary to the extent he renders investment advice for a fee. The investment advice must relate to "the advisability of investing in, purchasing, or selling securities." *See* 29 C.F.R. § 2510.3-21(c)(1)(i). Moreover, an agreement to provide investment advice must specify that the advice will "serve as a primary basis for investment decisions with respect to plan assets." *Id.* § 2510.3-21(c)(1)(ii)(B).

Here, Plaintiff does not plead that the purported advice served as a "primary basis" for the McCaffree Plan's investment decisions, or that there was a contract under which Principal Life agreed to render investment advice to the McCaffree Plan for a fee. This is not surprising because the contract does not say Principal Life's services would be a primary basis for the McCaffree Plan's investment decisions. *See* Ex. A.

Plaintiff points to a provision in the contract that says Principal Life will act as an investment manager with regard to the assets in the separate account. *See* Compl. ¶ 54 (alleging that Principal Life's status as an "investment manager" makes it a fiduciary under subsection (ii)). But there is no statement that Principal Life will be a fiduciary for purposes of the McCaffree Plan investing (or making a decision to invest) in a separate account. *See* Ex. A at 6 (Accumulation Group Annuity Endorsement Rider). Principal Life did indeed acknowledge its

"investment manager" status under 29 U.S.C. § 1002(38) (a different provision than the one cited by Plaintiff). This provision allows insurance companies to assume fiduciary status for the limited purpose of managing assets. It has nothing to do with the fees Plaintiff challenges in this case. If Principal Life makes imprudent investment decisions, those decisions could be challenged as a breach of fiduciary duty. But charging fees that were authorized by Plaintiff falls outside the scope of any such duty. *Caremark*, 474 F.3d at 473. Just as lawyers owe fiduciary duties to their clients but breach no duty when they draw earned fees from a retainer, so too Principal Life – a fiduciary in the limited sense of being an investment manager – breaches no duty when it receives the money it has earned under the contract.

### D. Principal Life Cannot Be A Fiduciary As A Plan Administrator Because Separate Account Fees Are Not Related To Plan Administration.

Finally, Plaintiff's allegation that Principal Life is an ERISA fiduciary under subsection (iii) of ERISA's definition of fiduciary simply parrots the statutory definition. *See* Compl. ¶ 56. Such legal conclusions are entitled to no weight on a motion to dismiss. *Iqbal*, 556 U.S. at 664. Subsection (iii) provides that a person is a fiduciary if "he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A)(iii). "Administration" under subsection (iii) refers to performing duties associated with ordinary plan administration, such as determining whether to grant or deny benefits. *See e.g.*, *Varity*, 516 U.S. at 502; *Pegram*, 530 U.S. at 223-24; *Libbey-Owens-Ford Co. v. Blue Cross & Blue Shield Mut.*, 982 F.2d 1031, 1035 (6th Cir. 1993). Plaintiff's claims do not involve the administration of the McCaffree Plan; they involve fees that were authorized by contract. As a result, this provision of ERISA's definition of fiduciary has no bearing here.

## CONCLUSION

Principal Life respectfully requests that the Court order oral argument on this motion, dismiss the Complaint with prejudice, and award any other appropriate relief.

Dated: May 9, 2014                                  Respectfully submitted,

/s/  Eric S. Mattson

Angel West
aaw@nyemaster.com
Nyemaster Goode, PC
700 Walnut St., Suite 1600
Des Moines, IA 50309
Telephone: (515) 283-3127
Fax: (515) 283-8045

Joel S. Feldman
jfeldman@sidley.com
Eric S. Mattson
emattson@sidley.com
Jen C. Won
jwon@sidley.com
Sidley Austin LLP
One South Dearborn St.
Chicago, IL 60603
Telephone: (312) 853-7000
Fax: (312) 853-7036

*Counsel for Defendant*
*Principal Life Insurance Company*

# CERTIFICATE OF SERVICE

I certify that on May 9, 2014, I electronically filed the foregoing Defendant Principal Life Insurance Company's Memorandum in Support of Motion to Dismiss with the Clerk of Court using the ECF system, which will send notification of the filing to the parties participating in the Court's electronic filing system.

/s/ Eric S. Mattson