UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| MCCAFFREE FINANCIAL CORP. ON BEHALF OF THE MCCAFFREE FINANCIAL CORP. EMPLOYEE RETIREMENT PROGRAM, on behalf of a class of those similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> PRINCIPAL LIFE INSURANCE COMPANY, <br><br> Defendant. | Case No. 4:14-cv-102-SMR |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS (DE 34)**

## I. INTRODUCTION

Plaintiff McCaffree Financial Corp. ("McCaffree") has alleged viable claims against Defendant Principal Life Insurance Company ("Principal") for breaches of fiduciary duty and prohibited transactions under ERISA. More specifically, McCaffree has adequately alleged that Principal is an ERISA fiduciary with respect to the conduct at issue here.

In Principal's Group Annuity Contract with McCaffree, Principal admits that it is "an investment manager as described under [ERISA] solely with respect to Plan assets held in Separate Accounts under this contract" and is therefore "a fiduciary of the Plan for this purpose, within the meaning of [ERISA] with respect to our responsibilities as investment manager." Exh. "A" to Mohs Decl., Accumulation Group Annuity Endorsement Rider, p. 6 (DE 34-3). *See also* Compl., ¶ 16. All of McCaffree's claims arise directly from Principal's responsibilities as an investment advisor and thus an ERISA fiduciary. This is because all of McCaffree's claims are

based on the investment options that Principal, as investment advisor, made available to participants in the McCaffree Financial Corp. Employee Retirement Program ("McCaffree Plan"). These Principal-selected investment options were accompanied by excessive and unnecessary fees, most of which inured to Principal and its affiliates. As the Eight Circuit held in *Braden v. Wal-Mart Stores*, *Inc.*, 588 F.3d 585, 595-96 (8th Cir. 2009), an ERISA fiduciary breaches its duties if it offers plan participants a menu of investment options with excessive fees as compared to readily-available alternatives.

Principal's admission that it is an investment manager, and thus an ERISA fiduciary, when combined with a fair reading of McCaffree's claims, is sufficient to conclusively establish that Principal is a fiduciary under 29 U.S.C. § 1002(21)(A)(ii). Thus, Principal's motion to dismiss should be denied.

In addition, Principal qualifies as a fiduciary on another, independent basis. By setting its own compensation – which is paid from the assets of the McCaffree Plan and which is part of the administration of the McCaffree Plan – Principal is also a fiduciary under 29 U.S.C. § 1002(21)(A)(i) and (iii). An ERISA fiduciary has fiduciary duties with respect to its compensation when it retains the discretion to set its own compensation, as Principal does here. Compl., ¶¶ 20-21. *Glass Dimensions, Inc., ex rel. Glass Dimensions, Inc., Profit Sharing Plan & Trust v. State Street Bank & Trust Co.*, 931 F. Supp. 2d 296, 304 (D. Mass. 2013); *Charters v. John Hancock Life Ins. Co.*, 583 F .Supp. 2d 189, 197 (D. Mass. 2008).

*Santomenno v. Transamerica Life Ins. Co.*, 55 Employee Benefits Cas. 1266, No. CV 12-02782 DDP, 2013 WL 603901 (C.D. Cal. Feb. 19, 2013) is practically identical to this case. *Santomenno* involved a life insurer acting as an ERISA fiduciary that offered "separate account" investment options with excessive fees. The court in a comprehensive and well-reasoned

decision rejected the exact same arguments Principal makes here. This Court should follow *Santomenno* and hold that McCaffree has alleged viable ERISA claims against Principal.

**II.     SUMMARY OF RELEVANT ALLEGATIONS**

McCaffree alleges that Principal has violated several provisions of ERISA by charging excessive investment management and other fees to participants in the McCaffree Plan and participants in other ERISA-governed defined-contribution retirement plans in connection with Principal's "Separate Account" investment products. Compl., ¶ 1. As administrator of the McCaffree Plan, McCaffree brings claims under 29 U.S.C. § 1132(a)(2) and (a)(3) for Principal's violations of 29 U.S.C. § 1104(a)(1)(A) (duty of loyalty), 29 U.S.C. § 1104(a)(1)(B) (duty of prudence), and 29 U.S.C. § 1106(b)(1) (prohibited transactions). Compl., ¶¶ 52-78. McCaffree seeks damages and injunctive relief on behalf of both the participants and beneficiaries of the McCaffree Plan and participants and beneficiaries of other ERISA-governed defined-contribution retirement plans that invested in Principal Separate Accounts. *Id.*, ¶ 3.

McCaffree is party to a Group Annuity Contract with Principal dated September 1, 2009. Compl., ¶ 5. Under this contract, Principal offers a menu of investment options for participants in the McCaffree Plan and provides other services in connection with the McCaffree Plan in exchange for various fees and charges. *Id.*, ¶ 13. In this contract, Principal admits that it is "an investment manager as described under [ERISA] solely with respect to Plan assets held in Separate Accounts under this contract" and is therefore "a fiduciary of the Plan for this purpose, within the meaning of [ERISA] with respect to our responsibilities as investment manager." Exh. "A" to Mohs Decl., Accumulation Group Annuity Endorsement Rider, p. 6. *See also* Compl., ¶ 16.

The Group Annuity Contract includes a Separate Investment Account Rider that allows participants in the McCaffree Plan to invest in Principal Separate Accounts. Compl., ¶ 14. Principal itself decides which Separate Accounts may be offered to plan participants. It does this by offering a limited "menu" or "lineup" of 63 Separate Accounts. Exh. "A" to Mohs Decl., Separate Investment Account Rider, pp. 1-2. Of this universe of Separate Accounts, Principal further limits the options available to participants in a particular plan because Principal "reserve[s] the right to limit both the number of Separate Accounts available under the contract and the number available to each Member." *Id.* at p. 2. The other party to the contract (in this case, McCaffree) has almost no power to influence the Separate Accounts Principal chooses to offer. That party may only "send us Written Notification indicating you want the contract administered so that assets held under this contract will not participate in one or more of these Separate Accounts." *Id.*

Although Principal now claims that its admitted role as "investment manager" extends only to management of the Separate Accounts once a participant chooses to invest in them, this is contrary to Principal's own marketing materials. As Principal states on its website:

> The Principal understands the fiduciary responsibilities plan sponsors face in developing and monitoring an investment lineup appropriate to help meet the diverse needs of retirement plan participants. We undertake a rigorous due diligence process as a direct response to this challenge, resulting in a key differentiator – our Sub-Advised Investment Options.[1] Compl., ¶ 18.

---

[1] www.principal.com/retirement/biz/investmentoptions.htm, attached as Exhibit "A." This document is referenced in the Complaint. The term "Sub-Advised Investment Options" includes the Principal Separate Accounts at issue in this action. *Id.*

Principal also states that its investment products are "designed to be appropriate for retirement savings under employer-sponsored plans" and that it exercises "*fiduciary* oversight and the ability to oversee the investment manager selection and ongoing monitoring process." *See* attached Exhibit "A" (emphasis added). In other words, one key selling point for hiring Principal as investment manager is its claim that it "undertake[s] a rigorous due diligence process" in connection with the need to "develop[] and monitor[] an investment lineup appropriate to help meet the diverse needs of retirement plan participants" and exercises "fiduciary oversight" over that lineup. As set forth above, Principal itself provides this "investment lineup" to the plan sponsor and the sponsor has little role in this process once it has retained Principal.

Under the Separate Investment Account Rider, Principal maintains the power to unilaterally set the Management Fee for the Separate Accounts subject to a maximum fee of three percent (for all but one of the Separate Accounts) of the value of the assets in the Separate Accounts and to change the Management Fee with 30 days written notice. Exh. "A" to Mohs Decl., Separate Investment Account Rider, pp. 18-19; Compl., ¶ 20. Principal also charges Operating Expenses against the assets of the Separate Accounts, expenses such as "custodial fees, transfer taxes, brokerage fees, processing fees, and other taxes and fees associated with the operation of a Separate Account." Exh. "A" to Mohs Decl., Separate Investment Account Rider, p. 18; Compl., ¶ 21. These fees are also set unilaterally by Principal because there is no formula or other objective measure for how such Operating Expenses are calculated. *Id.*

The sum of the Management Fee and Operating Expenses results in grossly excessive fees charged to plan participants. Each Principal Separate Account does nothing more than invest in the corresponding Principal mutual fund. Compl., ¶ 25. Despite this, the total fees charged for the Principal Separate Accounts are substantially higher than the fees charged for the

corresponding Principal mutual fund. *Id*., ¶¶ 30-31, 33 and Tables I and II. No services provided by Principal justify the substantial difference between the Separate Account fees and the fees for the underlying mutual funds in which the Separate Accounts exclusively invest. Compl., ¶ 32. To the contrary, the managers and sub-advisors of these mutual funds provide all the day-to-day investment management services for these funds and are already well-compensated for these services by their own management fees. The additional layer of fees added by Principal's Separate Accounts has no justification. Compl., ¶ 34.

## III. ARGUMENT

### A. Standard on Motion to Dismiss Based on Status as an ERISA Fiduciary

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (internal quotation omitted). A complaint states a plausible claim for relief if its "factual content … allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In deciding a motion to dismiss, "the court must take the plaintiff's factual allegations as true." *Braden*, 588 F.3d at 594. And the complaint "should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Id.*

Under ERISA, "the term fiduciary is to be broadly construed." *Olson v. E.F. Hutton & Co.,* 957 F.2d 622, 625 (8th Cir. 1992) (internal quotation omitted). Whether a defendant is an ERISA fiduciary is a mixed question of law and fact and generally cannot be resolved on a motion to dismiss. *In re Xcel Energy, Inc. Securities, Derivative & "ERISA" Litig.*, 312 F. Supp. 2d 1165, 1181 (D. Minn. 2004). In other words, "fiduciary status is a fact sensitive inquiry and courts generally do not dismiss claims at this early [motion to dismiss] stage where the complaint

sufficiently pleads defendants' ERISA fiduciary status." *Young v. Principal Financial Group, Inc.*, 547 F. Supp. 2d 965 (S.D. Iowa 2008) (internal quotation omitted and alteration in original).

### B. The Misconduct Alleged in the Complaint Arises from Principal's Role as an Investment Advisor to the McCaffree Plan and its Participants

ERISA imposes fiduciary status on a person that "renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so." 29 U.S.C. § 1002(21)(A)(ii). There is no dispute that Principal is an investment advisor with respect to certain plan assets. Principal admits as much and further admits that it is "a fiduciary of the Plan for this purpose, within the meaning of [ERISA] with respect to our responsibilities as investment manager." Exh. "A" to Mohs Decl., Accumulation Group Annuity Endorsement Rider, p. 6. Principal, however, disputes that it was acting as a fiduciary when it made the selection of its Separate Accounts that it made available to participants in the McCaffree Plan.

Principal's argument is based on elevating form over function and is contrary to ERISA's protective policies, which require fiduciary status to be construed broadly. *Olson,* 957 F.2d at 625. Principal markets its services by acknowledging that the selection of the lineup of investment options available to plan participants is a fiduciary act and that its "rigorous due diligence process" in pre-selecting such a lineup is "a direct response to this challenge." Exh. "A," Compl., ¶ 18. Principal also states that its investment products are "designed to be appropriate for retirement savings under employer-sponsored plans" and that it exercises "*fiduciary* oversight and the ability to oversee the investment manager selection and ongoing monitoring process." Exh. "A" (emphasis added).

In other words, Principal is selling its expertise in selecting appropriate investment options for ERISA plans. And a plan that retains Principal can only offer its participants the Separate Accounts Principal selects for that plan, subject only to the plan's power to delete certain Separate Accounts. Exh. "A" to Mohs Decl., Separate Investment Account Rider, pp. 1-2. By its claimed expertise and almost total control over the lineup of investment options, Principal is effectively recommending (at the very least) the funds in its lineup to plan sponsors and participants and thus acting as an investment advisor.

As the Eighth Circuit held in *Olson*, an entity is a fiduciary under 29 U.S.C. § 1002(21)(A)(ii) as an investment advisor where the purported advisor's services "would be the primary basis for the Plan's investment decisions." 957 F.2d at 626.[2] Principal's conduct in controlling the investment lineup more than qualifies as fiduciary conduct under this test because its lineups are the "primary basis" for the plan's (or in this case, the participants') investment decisions. For example, if a plan participant wished to invest in a fund managed towards retirement in the year 2030, he or she would only have a single option, the Principal LifeTime 2030 Separate Account.

To be sure, the participant is also involved in the decision to invest in a particular Principal Separate Account. But to be an ERISA fiduciary, it is not necessary that an entity

---

[2] The holding of *Olson* was an application of 29 C.F.R. § 2510.3-21(c), which provides that an entity is an investment advisor subject to fiduciary duties where, *inter alia*, it "[r]enders any advice on a regular basis to the plan pursuant to a mutual agreement, arrangement or understanding … that such services will serve as a primary basis for investment decisions with respect to plan assets, and that such person will render individualized investment advice to the plan based on the particular needs of the plan …" Of the 63 Principal Separate Accounts listed in the Separate Investment Account Rider, Principal makes only a subset available to each plan. Participants in the McCaffree Plan, for example, were provided a choice of 29 Principal Separate Accounts. Compl., ¶ 24. Thus, Principal individualizes its plan lineup for each plan. *Id.*, ¶¶ 17-18.

exercise "entirely discretionary authority or control." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113, 109 S. Ct. 948, 955-56 (1989). "Rather, one is a fiduciary to the extent he exercises *any* discretionary authority or control." *Id.* (emphasis in original). Thus, the fact that Principal does not make the final investment decision is far from dispositive on the issue of whether it acts as a fiduciary when it channels plan participants into its overly expensive Separate Accounts. *See DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410 (4th Cir. 2007) (a fiduciary of a participant-driven, defined contribution ERISA plan "must exercise prudence in selecting and retaining available investment options").

For these reasons, courts have held that a person's control over the investment options plans offered to plan participants is sufficient to render that person an ERISA fiduciary, albeit under different parts of 29 U.S.C. § 1002(21)(A). In *Haddock v. Nationwide Financial Services, Inc.*, 419 F. Supp. 2d 156, 166 (D. Conn. 2006), the court held that "a reasonable jury could conclude that Nationwide exercises authority or control respecting disposition of plan assets by controlling which mutual funds are available investment options for the Plans and participants." The court in *Santomenno* adopted the holding of *Haddock*. *Santomenno*, 2013 WL 603901, *8.[3] *See also Healthcare Strategies, Inc. v. ING Life Ins. and Annuity Co.*, 961 F. Supp. 2d 393 (D. Conn. 2013) (discussed further below).

---

[3] Both *Haddock* and *Santomenno* cited and discussed Dep't of Labor, Advisory Op. 97-16A, 1997 WL 277979 (May 22, 1997). This advisory opinion does not apply directly here, because it was premised on Aetna's representation that the initial lineups of investment options for the relevant plans were selected by *plan fiduciaries wholly independent of Aetna*. The advisory thus addressed only the periodic addition of investment options by Aetna and found that, under certain circumstances, such additions did not create a fiduciary duty. Here, by contrast, Principal chooses the entire investment lineup for a contracted plan with no involvement by any independent fiduciary.

The authorities cited by Principal are readily distinguishable on this point. In *Hecker v. Deere & Co.*, 556 F.3d 575, 583-84 (7th Cir. 2009), the plaintiffs conceded that the employer, Deere, had "final authority" over the investment options offered to plan participants. McCaffree makes no such concession either here or in its Complaint. To the contrary, as set forth above, Principal has almost total control of the investment options offered to plan participants. Similarly, in *Leimkuehler v. American United Life Ins.*, 713 F.3d 905, 910 (7th Cir. 2013), the insurer offered a menu of 383 investment vehicles to the plan trustee and the trustee himself selected the funds to be made available to plan participants from that menu.[4] Again, McCaffree had no such involvement here. Furthermore, neither *Hecker* nor *Leimkuehler* involved an ERISA service provider that specifically marketed its expertise in offering a lineup of investment options that would comply with ERISA's fiduciary duties.[5] As the Eighth Circuit held in distinguishing *Hecker*, "[t]he ABB fiduciaries' reliance on *Hecker I* and its progeny is misplaced" because "[s]uch cases are inevitably fact intensive, and the courts in the cited cases carefully limited their decisions to the facts presented." *Tussey v. ABB, Inc.*, 746 F.3d 327, 335-36 (8th Cir. 2014).

For similar reasons, Principal qualifies as a fiduciary under 29 U.S.C. § 1002(21)(A), subsections (i) and (iii).[6] Subsection (i) provides that a person is a fiduciary "to the extent (i) he

---

[4] The Seventh Circuit's decision in *Leimkuehler* was contrary to the position of the Department of Labor, which filed an *amicus* brief in support of the plaintiffs there.

[5] *Renfro v. Unisys Corp.*, 671 F.3d 314 (3rd Cir. 2011) is even farther afield. In that case, Fidelity was expressly designated as merely a "directed trustee" and the trust agreement appointing Fidelity as such specifically stated that Unisys, and not Fidelity, was responsible for selecting the investment options offered by the plan.

[6] The Eighth Circuit distinguishes subsection (i) and (iii) as follows: "Subsection one imposes fiduciary status on those who exercise discretionary authority, regardless of whether such authority was ever granted. Subsection three describes those individuals who have actually been granted discretionary authority, regardless of whether such authority is ever exercised." *Olson*,

exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets." Applying subsection (i), the court in *Haddock* held (as set forth above) that, by controlling the investment options available to plan participants, Nationwide "exercises authority or control respecting disposition of plan assets." Here, similarly, Principal exercises almost total authority and control over the investment options offered to plan participants, which when selected become plan assets. By contrast, in *Walsh v. Principal Life Ins. Co.*, 266 F.R.D. 232, 236 (S.D. Iowa 2010), Principal merely communicated with participants of an ERISA plan it administered to recommend rolling over their retirement funds into Principal products when they left their employment. The level of authority and control in that case was obviously far less than is present here.

Subsection (iii) provides that a person is an ERISA fiduciary of a plan "to the extent … (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." "Administration" is not expressly defined by ERISA but the Supreme Court has broadly defined this term as those "powers as are necessary or appropriate for the carrying out of the purposes" of the plan. *Varity Corp. v. Howe*, 516 U.S. 489, 502, 116 S. Ct. 1065, 1074 (1996). Here, Principal exercises discretion in selecting the Separate Accounts that will be made available to plan participants and the exercise of this discretion is certainly "necessary or appropriate" for carrying out the purposes of the McCaffree Plan, which is to provide investment options to fund retirement benefits. *See Healthcare Strategies, Inc.*, 961 F. Supp. 2d at 401

---

957 F.2d at 625. As discussed *infra*, both provisions apply here because Principal both exercised and was granted authority relating to the McCaffree Plan.

(holding that ING was a fiduciary under subsection (iii) because it had the authority to change investment options for the plan and such authority related to the administration of the plan).[7]

### C. Principal Exercises Discretion in Setting its Own Compensation and Thus is a Fiduciary With Respect to That Conduct

Principal is also a fiduciary with respect to the conduct alleged in the Complaint for another, independent reason. Principal exercises considerable discretion over setting its compensation. Under the Separate Investment Account Rider, Principal maintains the power to unilaterally set the Management Fee for the Separate Accounts subject to a maximum fee of three percent (for all but one of the Separate Accounts) of the value of the assets in the Separate Accounts and to change the Management Fee with 30 days written notice. Exh. "A" to Mohs Decl., Separate Investment Account Rider, pp. 18-19; Compl., ¶ 20. Principal also charges Operating Expenses against the assets of the Separate Accounts, expenses that "include but are not limited to custodial fees, transfer taxes, brokerage fees, processing fees, and other taxes and fees associated with the operation of a Separate Account." Exh. "A" to Mohs Decl., Separate Investment Account Rider, p. 18; Compl. ¶ 21. These fees are also set at Principal's discretion because there is no formula or other objective measure for how such Operating Expenses are calculated. *Id.* And these Management Fees and Operating Expenses have a direct effect on plan assets, as these fees are deducted from the returns on the funds invested in Principal's separate accounts.

---

[7] Principal argues there is no connection between Principal's selection of investment options and the excessive fees charged in connection with those options. In truth, these issues are inextricably intertwined. The Separate Accounts offered by Principal harm plan participants precisely because Principal charges excessive fees in connection with such accounts and the Separate Account structure provides no benefit to plan participants that justify these fees.

Where an ERISA fiduciary has discretion over its own compensation, setting that compensation is itself a fiduciary act:

> When an entity enters into a contract with an ERISA plan and the contract gives the entity discretion in making decisions regarding the plan or its assets, the entity may become a fiduciary with respect to those decisions. For instance, if a contract gives an entity discretion and control over the factors that determine the amount of its compensation, the entity becomes an ERISA fiduciary with respect to its compensation.

*Glass Dimensions*, 931 F. Supp. 2d at 304. *See also F.H. Krear & Co. v. Nineteen Named Trs.*, 810 F.2d 1250, 1259 (2d Cir. 1987) ("[A]fter a person has entered into an agreement with an ERISA-covered plan, the agreement may give it such control over factors that determine the actual amount of its compensation that the person thereby becomes an ERISA fiduciary with respect to that compensation.")

In *Glass Dimensions*, State Street's contract with the class members imposed only a "maximum lending fee and gave State Street discretion to set its fee anywhere from 0% to 50%." *Id.* Because of this discretion in setting its compensation, the court denied summary judgment to State Street on whether it was a fiduciary with respect to this compensation. *See also Charters*, 583 F. Supp. 2d at 197 (John Hancock was a fiduciary with respect to its "administrative maintenance charge" because it had "sole authority to set the … charge, limited only by a maximum charge for each sub-account" but "did not disclose how the administrative maintenance charge was calculated").[8]

---

[8] Although Principal cites *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1259 (2d Cir. 1987) in support of its argument that it owes no fiduciary duty with respect to its compensation, that case actually supports McCaffree's position because the court held that whether a person dealing with a plan was a fiduciary with respect to his compensation was a factual issue for the jury.

13

As in *Glass Dimensions*, Principal's "management fee" was expressed as a maximum and Principal retained considerable discretion to charge less than that. And as in *Charters*, Principal's "operating expenses" are set solely by Principal and the contract contains no disclosure of precisely how these expenses are calculated.[9] Thus, Principal is a fiduciary under 29 U.S.C. § 1002(21)(A)(i) with respect to the fees it charges in connection with its Separate Accounts.[10]

Contrary to Principal's argument, the fact that the Group Annuity Contract was supposedly negotiated at "arms-length"[11] does not change this conclusion. Even if a contract with an ERISA fiduciary is initially negotiated at arms-length, subsequent performance under that contract is subject to ERISA's demanding fiduciary duties. *See Ed Miniat, Inc. v. Globe Life Ins. Group*, 805 F. 2d 732, 737 (7th Cir. 1986) ("When a contract … grants an insurer discretionary authority, even though the contract itself is the product of an arm's length bargain, the insurer may be a fiduciary."); *Tussey v. ABB, Inc.*, No. 06-04305-CV-NKI, 42 Employee Benefits Cas. 2863, 2008 WL 379666 (W.D. Mo. Feb. 1, 2008) (applying *Ed Miniat* and denying Fidelity's motion to dismiss on the basis that it was not a fiduciary). Here, it is the excessive *total*

---

[9] Principal argues that McCaffree's allegations regarding the operating expenses are somehow deficient because McCaffree does not allege that Principal included any charges in the operating expenses that were not necessary for operating the Separate Accounts. The language in the agreement defining operating expenses is vague and open-ended, as Principal states that such expenses "include, but are not limited to" certain categories of expenses, including "other taxes and fees." In any event, from the perspective of a plan participant, there is no difference between the management fee and operating expense. Both charges diminish the return from the Separate Account. McCaffree claims that the *total* fees and expenses charged by Principal are excessive, without regard to whether Principal characterizes a particular charge as a "management fee" or an "operating expense."

[10] Principal is also a fiduciary under 29 U.S.C. § 1002(21)(A)(iii). Managing and operating the Separate Accounts relates directly to plan "administration" as set forth above.

[11] As the court noted in *Santomenno*, negotiations between plan sponsors and potential ERISA fiduciaries are not truly "arms-length." 2013 WL 603901, *6-7.

fees and charges that Principal actually imposed month after month once the contract was executed that McCaffree challenges, not the theoretical maximum management fee purportedly negotiated in the contract. This is a critical distinction because, as shown in paragraph 33 and Table II of the Complaint, the total effective fee charged by Principal differed substantially from the then-current management fees disclosed in the Table of Separate Account Features. Exh. "A" to Mohs Decl., Separate Investment Account Rider, pp. 27-30. For example, the supposed management fee for the SmallCap Growth I fund is 2.26 percent (Exh. "A" at p. 29) while the actual effective fee is 2.81 percent (Table II). By agreeing to a maximum management fee, McCaffree in no way agreed to grant Principal *carte blanche* to charge grossly excessive fees.

### D. McCaffree Has Adequately Alleged That Principal Breached its Fiduciary Duties of Loyalty and Prudence and Engaged in Prohibited Transactions

As set forth above, McCaffree has properly alleged that Principal is a fiduciary with respect to selecting the investment options available to plan participants and with the charges it imposed in connection with such options. Once its status as a fiduciary is established, the adequacy of McCaffree's allegations of breach is nearly self-evident.

ERISA imposes a duty of loyalty. An ERISA fiduciary must "discharge his duties with respect to a plan solely in the interests of the participants and beneficiaries and (A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administrating the plan." 29 U.S.C. § 1104(a)(1)(A). ERISA also imposes a duty of prudence. An ERISA fiduciary must act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B).

As the Eighth Circuit held in *Tussey*, 746 F.3d at 336, allegations that plan fiduciaries offered a range of investment options with unreasonable fees for the benefit of such fiduciaries alleges a breach of both duties:

> The facts of this case … involve significant allegations of wrongdoing, including allegations that ABB used revenue sharing to benefit ABB and Fidelity at the Plan's expense. Such allegations of wrongdoing with respect to fees state a claim for fiduciary breach.

In so holding, the Eighth Circuit expressly declined to follow *Hecker* and its progeny, the cases that form the heart of Principal's challenge to the adequacy of McCaffree's claims.

Similarly, in *Braden*, the Eighth Circuit held that allegations that ERISA fiduciaries that offered investment options to plan participants with excessive fees stated a claim for breach of the duties of prudence and loyalty. 588 F.3d at 595-96. Like *Braden*, this case alleges excessive fees and uses the fees charged to purchase institutional class shares of mutual funds as a comparator to show that Principal's fees were in fact excessive. Indeed, this case presents a far more compelling case for breach of fiduciary duty than that presented in *Braden*. In *Braden*, the Wal-Mart Retirement Plans Committee selected the investment options and did not directly benefit from higher fees. Here, by contrast, Principal both selects the investment options and benefits directly from the excessive fees. Principal has not even attempted to distinguish *Tussey* and *Braden*, governing precedent that is directly on point.

Finally, McCaffree has alleged a valid claim that Principal engaged in transactions prohibited by ERISA. 29 U.S.C. § 1106(b)(1) prohibits a plan fiduciary from "deal[ing] with the assets of the plan in his own interest or for his own account." Principal violated this provision by deducting from plan assets the substantial fees and expenses imposed by Principal and its affiliates. Eventually, Principal may defend against such a claim by establishing that these fees

16

were "reasonable compensation" and reflected "expenses properly and actually incurred," 29 U.S.C. § 1108(b)(2). McCaffree, however, clearly alleges that Principal's total compensation was anything but reasonable and reflective of actual expenses because "the Separate Account fees obtained by Principal on top of the mutual fund fees do not reflect sufficient additional value or expense to justify the size of such fees." Compl., ¶ 74. In any event, whether this defense applies cannot be decided on a motion to dismiss. *Braden*, 588 F.3d at 601.

## IV. CONCLUSION

For the foregoing reasons, this Court should deny Principal's motion to dismiss.

Dated: June 27, 2014

Respectfully submitted,

/s/ John F. Edgar
John F. Edgar
John M. Edgar
**EDGAR LAW FIRM LLC**
1032 Pennsylvania Avenue
Kansas City, Missouri 64105
Telephone: (816) 531-0033
Facsimile: (816) 531-3322
Email: jfe@edgarlawfirm.com
Email: jme@edgarlawfirm.com

Joseph R. Gunderson
**GUNDERSON SHARP, LLP**
321 E. Walnut Street, suite 300
Des Moines, IA 50309
Telephone: (515) 288-0219
Facsimile: (515) 288-0328
Email: jgunderson@midwest-law.com

Garrett W. Wotkyns
Michael C. McKay
**SCHNEIDER WALLACE**
**COTTRELL KONECKY LLP**
8501 N. Scottsdale Road, Suite 270
Scottsdale, Arizona 85253
Telephone: (480) 428-0143
Facsimile: (866) 505-8036
Email: gwotkyns@schneiderwallace.com
Email: mmckay@schneideerwallace.com

Jason H. Kim
**SCHNEIDER WALLACE**
**COTTRELL KONECKY LLP**
180 Montgomery Street, Suite 2000
San Francisco, California 94104
Telephone: (415) 421-7100
Facsimile: (415) 421-7105
Email: jkim@schneiderwallace.com

Attorneys for Plaintiff

## Certificate of Service

I certify that on June 27, 2014, I electronically filed the foregoing Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss with the Clerk of the Court using the ECF system, which will send notification of the filing to the parties participating in the Court's electronic filing system.

/s/ John F. Edgar